**MERANDO, INC.**
v.
**The UNITED STATES.**
No. 807–71.

United States Court of Claims.
March 16, 1973.

Maurice A. Guervitz, Washington, D. C., attorney of record for plaintiff.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

KUNZIG, Judge.

In this government contract case, the court is being asked by cross motions for summary judgment to review a decision[1] of the Armed Services Board of Contract Appeals (the Board) pursuant to the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970).

In issue is whether the contract language was clear enough to give the con-

tractor an unambiguous representation of the method of pouring concrete. Only the question of entitlement is presently before this court, the parties having stipulated to leave the question of quantum for further proceedings. .

We hold that the Board was correct as a matter of law when it concluded that the plaintiff's strained interpretation of the specifications would render the specifications as a whole meaningless. Accordingly, plaintiff's petition must be dismissed.

On April 20, 1966 plaintiff was awarded a contract. No. DA44–110–ENG–6020, for the construction of a reinforced concrete frame building at Fort Myer, Virginia. The building contained a basement plus four elevated levels. The wings of the building varied from 114 to 122 feet. The dispute arose when the resident engineer realized that the plaintiff intended to pour concrete for each wing in one continuous operation. This he argued was in violation of the sixty foot limitation for any concrete pouring. Paragraph 2–15 of Section 2 of the specifications provides in pertinent part:

2–15. CONSTRUCTION JOINTS: The unit of operation shall not exceed 60 feet in any horizontal direction, unless approved by the Contracting Officer. Concrete shall be placed continuously so that the unit will be monolithic in construction. At least 48 hours shall elapse between the casting of adjoining units. . . .

While the resident engineer interpreted the sixty foot limitation on the "unit of operation" as referring to a pour of concrete, the contractor interpreted it as referring to construction joints.[2] The plaintiff reluctantly adhered to the resident engineer's interpretation and filed a claim for the additional work which was subsequently required. The claim was denied by the Contracting Officer and the Board. Plaintiff then filed its petition in this court on November 4, 1971.

---

1. Merando, Inc., 69–2 BCA ¶ 7946.

2. A construction joint is the junction of two separate pours of concrete.

■ Although this court is not bound by the Board's interpretation of the contract provisions, since such is a matter of law, (International Telephone and Telegraph v. United States, 453 F.2d 1283, 1288, 197 Ct.Cl. 11, 20 (1972); HRH Constr. Corp. v. United States, 428 F.2d 1267, 1271, 192 Ct.Cl. 912, 918 (1970); Paschen Contractors, Inc. v. United States, 418 F.2d 1360, 1361, 190 Ct.Cl. 177, 180 (1969)) we find that the Board's conclusion in favor of the defendant in this case is correct. To adopt plaintiff's interpretation of the first sentence of paragraph 2–15 would render the rest of that paragraph and other paragraphs of the specifications totally meaningless. This would be violative of a well established principle that the provisions of a contract must be read as a whole. Northwestern Industrial Piping, Inc. v. United States, 467 F.2d 1308, 1312, 199 Ct.Cl. 540, 547 (1972); Embassy Moving & Storage Co. v. United States, 424 F.2d 602, 606, 191 Ct.Cl. 537, 543 (1970).

The second sentence of paragraph 2–15, "[c]oncrete shall be placed continuously so that the unit will be monolithic in construction", leaves no doubt that the "unit of operation" in the first sentence must refer to concrete and not to construction joints. It is not conceivable that a construction joint can be "monolithic in construction". Similarly, the third sentence, "[a]t least 48 hours shall elapse between the casting of adjoining units", would be absurd. Contractors do not "cast" construction joints.

■ Plaintiff's strained interpretation of "unit of operation" would also be inconsistent with the use of the same phrase in subparagraph b of paragraph 2–23 of the specifications which reads in pertinent part:

b. *Concrete* shall have a slump of no more than 2 inches. Concrete shall be compacted, screeded to grade, and pre-pared for the specified finish. Concrete shall be placed so that each *unit of operation* will be monolithic in construction and terminate at an expansion or construction joint. . . . [emphasis added]

The law does not intend that ordinary language should be interpreted to absurdity. Restatement of Contracts § 235 (1932).

Reading the contract as a whole, we find that the specifications were clear and unambiguous in requiring that the concrete pours should be monolithic in construction and not exceed 60 feet in any horizontal direction.

■ Plaintiff finally argued that the 60 foot limitation upon concrete pouring was not in accord with trade practice and therefore it was reasonable to interpret the 60 foot restriction as applying to something else. Recently, in Northwestern Industrial Piping, Inc. v. United States, *supra*, Judge Skelton of this court refuted this argument by stating:

. . . since we have decided that the contract specifications were clear and unambiguous, and since trade practice cannot override unambiguous contract provisions (S. S. Silberblatt, Inc. v. United States, 433 F.2d 1314, 1323, 193 Ct.Cl. 269, 288 (1970)), we do not have to consider the question of what was required by trade practice in the industry.

*Id.*, 467 F.2d at 1314, 199 Ct.Cl. at 550–551.

In light of the foregoing, we find that the contract as a whole was clear and unambiguous and that the Board's decision withstands a Wunderlich Act review. Accordingly, the plaintiff's motion for summary judgment is denied; the defendant's cross motion for summary judgment is granted; and the petition is hereby dismissed.